UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-25239-CV-MARTINEZ
(96-443-CR-MARTINEZ)
MAGISTRATE JUDGE REID

ELADIO ALBERTO MUNOZ,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## **REPORT OF MAGISTRATE JUDGE**

### I.    Introduction

Movant, **Eladio Alberto Munoz**, has filed a Motion to Vacate his judgment of conviction pursuant to 28 U.S.C § 2255 after the Eleventh Circuit granted leave to file a successive motion. [ECF No. 8]. Movant challenges his convictions for violations of 18 U.S.C. § 924(c) in Case No. 96-443-CR-Martinez.

This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), (C) and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts. [ECF No. 2]. After the Eleventh Circuit granted Movant leave to proceed, the Undersigned entered an order appointing counsel to file a § 2255 motion. [ECF No. 3]. The Federal Public Defender's Office then filed a Motion to Vacate, challenging Movant's convictions for violation 18 U.S.C. § 924(c) in light of *United States v. Davis*, 588 U.S. ___, 139 S. Ct. 2319 (2019). [CV ECF No. 8]. The United States filed a Response [CV ECF No. 10]. Movant filed a Reply [CV ECF No. 11], and later a Notice of Supplemental Authority. [CV ECF No. 12].

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that the Motion to Vacate be granted in part and be denied in part.

## II. Procedural History

Movant was charged in a Fourth Superseding Indictment with conspiracy to commit Hobbs Act extortion (Count I); substantive Hobbs Act extortion (Count II); carrying a firearm in furtherance of a crime of violence as set forth in Count II (Count III); attempted Hobbs Act extortion (Count IV); carjacking (Count V); and using and carrying a firearm during and in relation to a crime of violence as set forth in Counts IV and V (Count VI). [CR ECF No. 330]. After a jury trial he was convicted on all counts. [CR ECF No. 439]. The court sentenced Movant to a total term of 705 months. [CR ECF No. 551].

Movant's convictions were affirmed on appeal, however his sentences on Counts I, II, IV and V were vacated for resentencing. *See United States v. Diaz*, 248 F.3d 1065 (11th Cir. 2001). Upon remand, the court resentenced Movant to a total of 535 months. [CR ECF No. 660]. Movant's sentence of 235 months as to Counts I, II, IV was made concurrent to his sentence of 180 months as to Count V. His sentence of 60 months as to Count III was to be served consecutive to the sentence imposed in Counts I, II, IV and V. [*Id*.]. The sentence of 240 months as to Count VI was to be served consecutive to the sentenced imposed in Counts I, II, III, IV, and V. [*Id*.].

Movant has previously filed several § 2255 motions. [CR ECF 718]. The first motion was denied on the merits. *See* Order Adopting Report and Recommendations, *Munoz v. United States*, No. 05-23260-CV-GOLD, (S.D. Fla. May 27, 2008), [ECF No. 63]. The second and third motions were dismissed for lack of jurisdiction as successive. [CR ECF Nos. 756; 765; 757; 767].

The Eleventh Circuit then granted Movant's application to file this successive motion pursuant to 28 U.S.C. § 2255(h). [CV ECF No. 1]. In this most recent motion, Movant argues his

convictions under 18 U.S.C. § 924(c) should be vacated in light of *Davis* because Hobbs Act extortion is not a crime of violence.

The Government has conceded that Hobbs Act extortion is not a crime of violence and, therefore, Movant is entitled to relief as to Count III. The Government contends, however, that Movant's conviction as to Count VI should stand because Movant cannot establish that the conviction is based on the predicate offense of attempted Hobbs Act extortion rather than carjacking.

### III. Prima Facie Case under § 2255(h)

Although the Eleventh Circuit has found that Movant has made a *prima facie* showing sufficient to file a second or successive § 2255 motion, that finding is not conclusive on the issue of whether he has met the requirements of § 2255(h). *See Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1357–58 (11th Cir. 2007) (explaining that the court of appeals' determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

Even after the appellate court grants leave for the applicant to file a second or successive § 2255 motion, "'[t]he district court is to decide the [§ 2255(h)] issue[s] fresh, or in the legal vernacular, de novo.'" *In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013) (quoting *Jordan*, 485 F.3d at 1358). Only if the Court concludes that the applicant has established the statutory requirements for filing a second or successive motion will it "proceed to consider the merits of the motion, along with any defenses and arguments the respondent may raise." *Id.* In granting Movant leave to file a successive motion, the Eleventh Circuit recognized that this Court must first address whether Movant has met the requirements of § 2255(h). [CV ECF No. 1 at 6-7].

In order to file this successive motion, Movant must allege that his claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable." *See* 28 U.S.C. § 2255(h)(2). Here, Movant has alleged that his claim relies upon the Supreme Court's Decision in *Davis*. He argues that his convictions under 18 U.S.C. § 924(c) are no longer valid because Hobbs Act extortion is no longer a crime of violence. Although the Supreme Court did not expressly find that *Davis* was retroactive, the Eleventh Circuit has found that "the Supreme Court's holdings in *Davis* and *Welch*[1] necessarily dictate that *Davis* has been made retroactively applicable to criminal cases that became final before *Davis* was decided." *In re Hammoud*, 931 F.3d 1032, 1038 (11th Cir. 2019).

Since Movant's claims rely on a new rule of constitutional law that has been made retroactive to cases on collateral review, he has presented a claim that is cognizable in a second or successive § 2255 motion.

### IV. Procedural Default

Respondent first argues that Movant's *Davis* claim is procedurally defaulted because Movant did not first file his challenge on direct appeal. In fact, "a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982) (collecting cases)).

As such, general rules have developed that: "(1) a defendant must assert all available claims on direct appeal," and (2) "relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Id.* (quotations and internal citations omitted). "When a defendant fails to pursue an available claim on direct

---

[1] *Welch v. United States*, 578 U.S. ——, 136 S. Ct. 1257 (2016).

4

appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).

Respondent's procedural default argument is foreclosed by *Hammoud* because the claim Movant raises was "previously unavailable." *Hammoud,* 931 F.3d at 1039. In *Hammoud*, the Eleventh Circuit reviewed and granted an application to file a successive § 2255 motion. To receive such authorization, the Eleventh Circuit stated that the application must contain a claim involving "a new rule of constitutional law, made retroactive on collateral review by the Supreme Court, that was previously unavailable." *Id*. at 1035 (quoting 28 U.S.C. § 2255(h)(2)) (emphasis added).

In *Hammoud*, the Eleventh Circuit held that the applicant's *Davis* claim met the requirements of 28 U.S.C. § 2255(h)(2) and granted his application to file a successive § 2255 motion because the applicant was convicted before *Davis* was decided by the Supreme Court on June 24, 2019. *See id*. at 1040. This necessarily means that the applicant's *Davis* claim was in fact previously unavailable. Here, similarly, Movant is attempting to assert a claim that was unavailable at the time of his direct appeal. *See Lynn*, 365 F.3d at 1232 (citing *Mills*, 36 F.3d at 1055).

Next, the Undersigned finds that Movant's claim does involve a "transgression[] of constitutional rights." *Id*. (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)). Movant claims that his conviction relied upon an unconstitutionally vague statute. "Vague laws contravene the 'first essential of due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them." *Davis*, 588 U.S. at ___, 139 S. Ct. at 2325 (first quoting *Connally v. General Constr. Co*., 269 U.S. 385, 391 (1926), then citing *Collins v. Kentucky*, 234 U.S. 634, 638 (1914)).

Movant's claim, if true, would transgress upon his constitutional right to due process of law. *See Lynn*, 365 F.3d at 1232 (quoting *Richards*, 837 F.2d at 966). Accordingly, the Undersigned finds that there is no procedural default.[2]

### V. Merits

Movant's claims will be considered in light of the Eleventh Circuit's Order granting leave to file this successive motion.

A. Count III

Movant has met his burden of establishing relief as to Count III. As previously discussed, the United States has conceded that Hobbs Act extortion is not a crime of violence under § 924(c)'s elements clause. This concession requires the vacatur of Movant's conviction on Count III as the only predicate for that count is the underlying Hobbs Act extortion charge. Accordingly, his conviction as to Count III should be vacated.

B. Count VI

Movant has not met his burden of establishing relief as to Count VI, however. In granting Movant leave to file this Motion, the Eleventh Circuit recognized that it had not issued a published opinion deciding whether Hobbs Act extortion is a crime of violence under § 924(c)(3)(A)'s

---

[2] At least several other federal courts have come to similar conclusions; though those courts generally found that there was a procedural default, but that it can be excused because the movant's *Davis* claim was, at the time to appeal, a claim that "is so novel that its legal basis is not reasonably available to counsel." *Carter v. United States*, Case No. 16-cv-02184, 2019 WL 4126074, 2019 U.S. Dist. LEXIS 147187 at *13-14 (C.D. Ill. Aug. 28, 2019) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (quotation and internal citation omitted); *see also Howie v. United States*, Case No. 16-cv-437, 2019 WL 4743724, 2019 U.S. Dist. LEXIS 166237 at *13 (W.D.N.C. Sept. 27, 2019) (collecting cases). The Undersigned agrees, and alternatively finds that any procedural default is excused because Movant can show cause (i.e., that the *Davis* claim was "so novel" that is was "not reasonably available to counsel" at the time of Movant's criminal case), and at least arguable prejudice as to Count III, because Movant was subjected to an extended prison term as a result of his § 924(c) conviction. *See Carter*, 2019 WL 4126074, 2019 U.S. Dist. LEXIS 147187 at *13 (citing *Cross v. United States*, 892 F.3d 288, 295 (7th Cir. 2018)).

elements clause. However, the court pointed out that with regard to Count VI, carjacking remains a valid § 924(c) predicate after *Davis*. Then, the court stated:

> Therefore, because Munoz's § 924(c) convictions on Counts Three and Six may be predicated on his convictions for Hobbs Act extortion and attempted Hobbs Act extortion, respectively, he has made a *prima facie* showing that his *Davis* claim satisfies the statutory criteria of § 2255(h)(2) on the basis that his convictions may be unconstitutional under *Davis*, as he potentially was convicted under the now-invalid residual clause of § 924(c)(3)(B). *See* 28 U.S.C. § 2255(h)(2); *Davis*, 139 S. Ct. at 2324-25, 2336. [CV ECF No. 1 at 8].

The United States concedes that Hobbs Act extortion no longer qualifies as a crime of violence as a predicate for a § 924(c) conviction, but argues the Movant cannot meet his burden of proof that the jury verdict on Count VI was not based on his valid carjacking predicate offense. The United States cites *In re Cannon*, 931 F.3d 1236 (11th Cir. 2019), and *Beeman v. United States* 871 F.3d 1215, 1222 (11th Cir. 2017), in support of this argument. Movant asserts that *Beeman* does not apply [CV ECF No. 11 at 4], and that the jury's general verdict as to Count VI requires the Court to use the "least culpable offense" to analyze his conviction under § 924(c). [CV ECF No. 8 at 16].

In *Cannon*, the applicant was challenging his § 924(c) and (o) convictions on the basis that one of the underlying predicates – conspiracy to commit Hobbs Act robbery – no longer qualified as a crime of violence under the residual clause of § 924(c)(3)(B). *See Cannon*, 931 F.3d at 1240. Cannon also asserted that his indictment charged multiple predicate crimes in a single § 924(c) and (o) count. *See id.* at 1241.

The Eleventh Circuit found two of the applicant's § 924(c) convictions relied upon predicates that survived *Davis*. *See id.* at 1242. As to the § 924(o) conviction, the Court found there were multiple predicate offenses, including two carjackings, four drug crimes and one conspiracy to commit Hobbs Act robbery. *See id.* at 1243. The Court observed that "Cannon's predicate crimes seem **inextricably intertwined**" because "it is difficult to see how a jury would

7

have concluded that [he] was guilty of using a firearm during and in furtherance of the underlying Hobbs Act predicates without at the same time also concluding that he did so during and in furtherance of the underlying drug and carjacking predicates." *Id*. (emphasis added). Since the jury returned a general verdict that did not specify which offense served as the predicate, the court found the defendant had made a prima facie showing that his claim satisfied the criteria of § 2255(h). *Id*. The Eleventh Circuit noted that even if the district court found that conspiracy to commit Hobbs Act robbery was no longer a valid predicate, the defendant still bore the burden of proving the likelihood that the jury based its verdict solely on the conspiracy charge and not also on the other valid predicate offenses. *See id*. (citing *Beeman* at 1222).[3]

In *Beeman*, in addressing whether the movant could prove a *Johnson* claim,[4] the Eleventh Circuit held that "the movant must show that – more likely than not – it was the use of the residual clause that led to the sentencing court's enhancement of his sentence." *Id*. at 1222. The court further found that "[i]f it is just as likely that the sentencing court relied on the elements or enumerated offenses clause, solely or as an alternative basis for the enhancement, then the movant has failed to show that his enhancement was due to the residual clause." *Id*. "In the face of a silent record, this can be difficult, or even insurmountable, but it remains the defendant's burden nonetheless." *United States v. Dugas*, No. 5:16-CV-95/MCR/MJF, 2020 WL 535696, at *2 (N.D. Fla. Jan. 31, 2020) (citing *Beeman*, 871 F.3d at 1223-24).

---

[3] Directly applicable to Movant's case, and consistent with *Cannon*, the Eleventh Circuit recently granted Movant's co-defendant's application for leave to file a successive motion, but noted that the movant "still bears the burden of proving the likelihood that the jury based its verdict of guilty in Count 6 solely on the attempted Hobbs Act extortion and not on the valid carjacking predicate offense." USCA Order Granting Leave to File Successive Motion to Correct Sentence, *Echevarria v. United States*, No. 19-23482-CV-JEM, (S.D. Fla. Aug. 19, 2019) [ECF No. 1].

[4] The claim under *Johnson v. United States*, 576 U.S. 591, 135 S. Ct. 2551 (2015), argued that the movant's predicate crimes under the Armed Career Criminal Act's residual clause that had been invalidated as unconstitutionally vague. *Beeman* at 1217.

With this background in mind the question here is whether Movant can establish that it is more likely than not the jury relied solely upon the attempted Hobbs Act extortion predicate rather than the valid carjacking predicate to convict him of Count VI. This count was based on the events of January 11, 1996. [CR ECF 330 at 7]. The Eleventh Circuit in affirming this conviction on direct appeal recounted the following facts relevant to that incident:

> On January 11, 1996, [Eladio] Munoz, [Sergio] Echevarria, Orestes Hernandez, and Ilvigio [Hernandez] began stalking the Arias family again. . . . After calling Idania Arias's billing service business and going to her [medical] clinic, they finally located her after going to her home where they observed her leaving with her four-year-old son Anthony. They followed her to the library, where she picked up her eight-year-old son Joseph, and then back to her house. As she pulled into her driveway, Echevarria's white Jaguar pulled up behind her. Echevarria, Ilvigio, Orestes Hernandez, and Munoz got out and approached her with guns drawn. Idania Arias handed them her keys and told them to take what they wanted to which they responded that they wanted her and her children. Idania Arias and her two children were forced into the white Jaguar. Munoz stayed behind in order to steal Idania Arias's black Lexus.
>
> Idania Arias's eyes, hands, and ankles were duct taped. Duct tape was also placed on the eight-year-old Joseph. Echevarria, who was driving, took them to International Alignment – a paint and body shop. When they got there, they drove inside to wait for Munoz. Idania Arias continually asked why she was being kidnapped, but they did not answer and told her to quit asking questions. She was told that "El Negro" (Munoz) would tell her why she was there when he arrived.
>
> The kidnappers asked about Mr. Arias's whereabouts. According to Idania Arias, the kidnappers appeared to know everything about her clinic, her billing company, and her medical supply business. After about forty-five minutes, there was another cellular telephone call from Orestes Hernandez's telephone to Lopez and Diaz's home telephone. Ilvigio then beeped [Ismael] Camacho. When Camacho returned the call, he was instructed to come to the shop because they had some kidnapping victims.
>
> Cellular telephone records from the time period when the Arias family was in the body shop revealed the multiple telephone calls and also revealed that the kidnappers tried to reach Mr. Arias at the medical clinic. The men forced Idania Arias to call her husband and tell him that she and the children had been kidnapped, and if he ever wanted to see them alive, he would have to meet the kidnappers at the clinic with $500,000. Jose Arias was warned not to call the police. The kidnappers intended on also seizing Jose Arias to insure that he did not go to the police. On his way to the clinic, however, Jose Arias called the police and never made it to the clinic.

9

> The kidnappers returned from the clinic empty-handed. Munoz told Idania Arias they wanted $500,000 ransom. They explained to her that this was "their job" and that usually they burn, torture, and shock their victims. Idania Arias was hit, and the kidnappers threatened to kill her children if she did not raise the money. Idania Arias then was released to raise the ransom.
>
> The children were kept at the warehouse overnight and then were taken to the Jamaica Inn around 5:00 a.m. the next morning. Ilvigio rented a room at the motel, and he and Munoz took the children there to wait for the ransom. Ilvigio kept Idania Arias's beeper so she could maintain contact with him regarding her progress in raising the $500,000.
>
> Following her release, Idania Arias went to her parents' home where she was met by the Metro Dade Police. Upon meeting them, she was so terrorized that she did not believe they were really police officers. After she accepted that her husband had contacted the police, she cooperated and went to the police station where an undercover telephone was set up for Idania Arias to phone the kidnappers. Idania Arias would page her beeper and Ilvigio would call her back immediately. The cellular telephone records for January 11 and 12, 1996 reflect multiple calls between Orestes Hernandez's cellular telephone, Ilvigio's cellular telephone, and the undercover telephone.
>
> Following the advice of the police, Idania Arias told the kidnappers that she could raise only $250,000. Ilvigio and Munoz agreed to accept this amount, and Idania Arias arranged for a controlled delivery to the kidnappers of a package purporting to be the ransom money. The drop-off site was changed a number of times until the kidnappers finally decided on the cemetery, where Idania Arias was told to drop the money behind a white and red car. Both Ilvigio and Idania Arias testified that, while driving to the drop off site, Idania demanded to know the location of her children. Ilvigio informed her that they were in Room 43 at the Jamaica Inn.
>
> Ilvigio, Munoz, Echevarria, Orestes Hernandez, and Camacho waited in two separate vehicles parked across the street from the cemetery. The men saw Arias approach the area as instructed and drop the purported money behind the white and red car. However, at that point they also saw the police converge upon the occupant of the car, Humberto Munoz (no relation to Eladio Munoz). Realizing that Idania Arias had gone to the authorities, the kidnappers left the area.
>
> Later, Munoz drove Ilvigio home where, approximately five minutes after Ilvigio arrived, he was arrested. When Ilvigio was arrested, he still had Arias's beeper in his possession as well as the cellular phone used during the ransom negotiations. After Ilvigio confirmed to the police that the kids were in the Jamaica Inn, the children were safely recovered.

*Diaz*, 248 F.3d at 1077-78 (internal citations to record evidence omitted). At trial one of the co-conspirators testified that Movant was armed as he approached the victim's car. *See id.* at 1096.

10

The facts at trial clearly established that Movant was armed and brandished[5] a firearm during and in relation to a crime of violence. Further, the record is bereft of any evidence establishing that Movant's § 924(c) conviction in Count VI was, more likely than not, based on the (now-invalid) predicate offense of attempted Hobbs Act Extortion. This is so because the carjacking offense was inextricably intertwined with the attempted Hobbs Act extortion offense in that Movant committed the armed carjacking during the course of, and in furtherance of, the attempted Hobbs Act extortion. Moreover, the Court instructed the jurors that to find Movant guilty they had to find that he "committed the specific robbery, extortion <u>or carjacking</u> offense as alleged in the indictment" [CR ECF No. 445 at 23] (emphasis added). Consequently, in light of these facts and the jury's guilty verdict on the carjacking charge, Movant cannot establish that it is more likely than not that his § 924(c) conviction in Count VI rested solely upon the predicate of attempted Hobbs Act extortion and not also or alternatively on the carjacking predicate. Under *Beeman*, Movant has not met his burden to show that it is more likely than not that his conviction on Count VI relied upon the now invalidated residual clause rather than the elements clause.[6]

Movant contends that this Court must conclude that his conviction for attempted Hobbs Act extortion (Count IV) is the "operative predicate" for his § 924(c) conviction in Count VI. He cites *In re Gomez*, 830 F.3d 1225 (11th Cir. 2016). [CV ECF No. 8 at 14].

In *Gomez*, the Eleventh Circuit granted the movant's application to file a successive § 2255 motion based on *Johnson*. 830 F.3d at 1228. In reaching this disposition, *Gomez* stated that the applicant's indictment was "duplicitous" inasmuch as it listed multiple predicate offenses for his

---

[5] "The weapons were brandished by appellants[.]" *Id.* at 1097.

[6] Under *Beeman*, where "the evidence does not clearly explain what happened…the party with the burden loses." *Beeman*, 871 F.3d at 1225 (internal citation omitted).

11

§ 924(c) conviction. *See id.* at 1226-27. *Gomez* expressed concern that that "general verdict of guilty [did] not reveal any unanimous finding by the jury that the [applicant] was guilty of conspiring to carry a firearm during one of the potential predicate offenses, all of predicate offenses, or guilty of conspiring during some and not others." *Id.* at 1227. *Gomez* reasoned:

> It is certainly possible that the government may have presented evidence that [the applicant] "possessed" a firearm at some point during the ongoing Hobbs Act conspiracy. But, the evidence may likewise have shown that he left that firearm at home for the drug trafficking crimes, or the attempted robbery. And we can't know what, if anything, the jury found with regard to [the applicant's] connection to a gun and these crimes.

*Id.*

Further, *Gomez* suggested that "[a]n indictment that lists multiple predicates in a single § 924(c) count allows for a defendant's mandatory minimum to be increased" in a way that violates the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013). *Id. Alleyne* held that "facts that increase mandatory minimum sentences must be submitted to the jury" "and found beyond a reasonable doubt." 570 U.S. at 116. *Gomez* expressed concern that a duplicitous indictment could require the court to "guess which predicate the jury relied on" and engage in unconstitutional "'judicial factfinding' when it comes to increasing a defendant's mandatory minimum sentence." 830 F.3d at 1227-28.

However, in granting the applicant's application, *Gomez* stated that "the question of whether *Johnson* invalidate[d] [his] sentence must be decided in the first instance by the [d]istrict [c]ourt" and that "[i]t is the job of the district court to decide every aspect of [his] motion . . . de novo." *Id.* at 1228. Thus, *Gomez* did not determine that the applicant's § 924(c) conviction was invalid in light of *Davis*. It merely determined that the applicant was entitled to file a successive § 2255 motion because he had alleged a potentially valid claim under *Johnson*.

Notably, *Gomez* does not address the burden of proof under § 2255. Even before *Gomez* was decided, the Eleventh Circuit had held that "a movant has the burden of showing that he is entitled to relief in a § 2255 motion[.]" *In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016) (citing *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015); *LeCroy v. United States*, 739 F.3d 1297, 1321 (11th Cir. 2014)); *see also Beeman*, 871 F.3d at 1222 (noting "a long line of [binding] authority [dating to the 1970s] holding that a § 2255 movant bears the burden to prove the claims in his § 2255 motion" (citing cases)). This long line of cases -- which led to the Eleventh Circuit's decisions in *Moore* and *Beeman* holding that a § 2255 movant bears the burden of proving a *Johnson* claim -- bind this Court.

Movant contends that *Beeman* is inapplicable because it "was a *Johnson*-based decision regarding application of the ACCA's recidivist sentencing enhancement." [CV ECF No. 11 at 5 n. 3]. Again, however, this contention disregards *Hammoud* and *Cannon*, which apply *Moore* and *Beeman* to a § 2255 movant's *Davis* claim. This contention also disregards the similarities between *Johnson* and *Davis* claims. *See In re Pollard*, 931 F.3d 1318, 1320-21 (11th Cir. 2019) (noting similarity of *Johnson* and *Davis* claims and stating that caselaw governing *Johnson* claims may apply to *Davis* claims).

Movant contends that *Cannon*'s discussion of the burden of proof for *Davis* claims is dicta. *See* [CV ECF No. 11 at 4]. Assuming this were true, there remains a long line of controlling cases holding that a § 2255 movant bears the burden to prove his claims. Therefore, even if both *Hammoud*'s and *Cannon*'s discussion of the burden of proof for *Davis* claims were dicta, the Undersigned would still conclude that a *Davis* movant must prove that it is more likely than not that his § 924(c) conviction was based solely on the residual clause. *See Beeman*, 871 F.3d at 1221- 22 ("[L]ike any other § 2255 movant, a *Johnson* § 2255 claimant . . . must show that--more likely

13

than not--it was use of the residual clause that led to the sentencing court's enhancement of his sentence.").

Further, Movant has not shown that *Alleyne* would invalidate his conviction on Count VI or otherwise entitle him to relief. For starters, "*Alleyne* does not apply retroactively on collateral review." *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1285 (11th Cir. 2014) (*per curiam*) (citation omitted); *see also Cannon*, 931 F.3d at 1241 n.3.

Moreover, *Alleyne* is distinguishable. *Alleyne* held that "facts that increase mandatory minimum sentences must be submitted to the jury" "and found beyond a reasonable doubt." 570 U.S. at 116. Currently, § 924(c) prescribes a 5-year mandatory minimum sentence for using or carrying a firearm during and in relation to a crime of violence. *See id.* at 103; *see also* 18 U.S.C. § 924(c)(1)(A)(i). The mandatory minimum increases to seven years "if the firearm is brandished" and ten years "if the firearm is discharged." 570 U.S. at 104; *see also* 18 U.S.C. § 924(c)(1)(A)(ii)-(iii).

But here, when Movant committed his § 924(c) offenses, the statutorily mandated term of imprisonment was five years for the first conviction and 20 years for the second or subsequent conviction. *See* 18 U.S.C. § 924(c) (1994). In accordance with the statute and its "binding interpretation . . . at that time," the district court "stacked" movant's § 924(c) convictions such that he received a 5-year sentence on his first conviction and consecutive 20-year sentences on each remaining one. [CV ECF No. 8 at 3 (internal quotation marks omitted)]. In stark contrast to *Alleyne*, the Court in this case did not impose a sentence exceeding 20 years on Count VI based on judicial factfinding (e.g., the firearm was brandished or discharged). Section 924(c) did not prescribe increased mandatory minimum sentences for brandishing or discharging a firearm when Movant committed his offenses. *See* Act to Throttle the Criminal Use of Guns, Pub. L. No. 105-

386, 112 Stat. 3469 (1998); *see also Lomeli v. United States*, No. 1:15-CV-00347-JHH, 2015 WL 1854885, at *4 n.3 (N.D. Ala. Apr. 22, 2015) ("In 1998, Congress amended § 924(c) to establish three levels of mandatory minimum punishments: five years for possession of a firearm, seven years for brandishing a firearm, and ten years for discharging a firearm . . . .").

In short, the Court did not increase, through "judicial factfinding" or otherwise, Movant's 20-year mandatory sentence on his § 924(c) conviction in Count VI. Thus, even if *Alleyne* applied in this § 2255 proceeding, his sentence would remain unchanged. *See United States v. Hatten*, 646 F. App'x 916, 918 (11th Cir. 2016) (*per curiam*) ("*Alleyne* [is] irrelevant because [the defendant's] mandatory minimum sentence was unchanged.").

Movant's next contention is that the categorical approach shows that this Court must conclude that only attempted Hobbs Act extortion established Movant's § 924(c) conviction in Count VI. [CV ECF No. 8 at 16]. This contention fails.

Courts "apply the categorical approach when determining whether an offense constitutes a 'crime of violence' under the elements clause [of § 924(c)]." *Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019) (citing *United States v. St. Hubert*, 909 F.3d 335, 348-49 (11th Cir. 2018)). "In doing so, '[courts] must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized, and then determine whether even those acts' qualify as crimes of violence." *St. Hubert*, 909 F.3d at 349 (first alteration added) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013)).

Under the modified categorical approach, when a statute is "divisible" (i.e., defines multiple crimes), courts may consider a limited class of judicial documents to determine "'what crime, with what elements, a defendant was convicted of.'" *United States v. Gandy*, 917 F.3d 1333, 1339 (11th Cir. 2019) (quoting *Mathis v. United States*, 579 U.S. ___, 136 S. Ct. 2243, 2249

15

(2016)). Courts may then presume that that conviction rested on the least criminalized acts and determine whether that crime is a crime of violence under § 924(c)'s elements clause. *See id.* at 1339-40.

Here, however, the issue is not whether the predicates for Movant's § 924(c) conviction in Count VI (attempted Hobbs Act extortion and carjacking) are crimes of violence under the elements clause. The Government has conceded that attempted Hobbs Act extortion is not, and the Eleventh Circuit has held that carjacking is. Rather, the dispositive issue is whether Movant has shown that it is more likely than not that the jury based his § 924(c) conviction in Count VI solely on his conviction for attempted Hobbs Act extortion. On this record, this question of "historical fact" does not further depend on the categorical or modified categorical approach. *See Beeman*, 871 F.3d at 1224 n.5.

Movant next contends that he is entitled to relief under *Stromberg v. California*, 283 U.S. 359 (1931). [CV ECF No. 8 at 17]. *Stromberg* held that, "where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." *Griffin v. United States*, 502 U.S. 46, 53 (1991); *see also Stromberg*, 283 U.S. at 367-68.

As applied here, a *Stromberg* claim contends that a general verdict that "*may have* rested" on § 924(c)'s residual clause violates due process and warrants vacatur of the conviction. However, neither party addresses the more recent Supreme Court case of *Hedgpeth v. Pulido*, 555 U.S. 57 (2008), which held that harmless error analysis is required in cases alleging a *Stromberg* error. *See, e.g., Horne v. United States*, No. 20-22108-CIV-ALTONAGA, 2020 U.S. Dist. LEXIS 220496, at *12-23 (S.D. Fla. Nov. 18, 2020).

*Stromberg* does not entitle Movant to relief on his *Davis* claim in this § 2255 proceeding because even assuming there was a *Stromberg* error, his predicate convictions in Count VI are inextricable intertwined, and it is not reasonably likely that the jury solely convicted Movant based upon the invalid predicate. Alternatively, Movant has not shown that it is more likely than not that the jury based his Count VI conviction solely on his attempted Hobbs Act extortion offense. Consequently, he has not shown actual innocence of this § 924(c) offense and is not entitled to vacatur of it.

In sum, Movant's § 2255 Motion should be granted in part and denied in part. Movant's convictions and sentences in Count III should be vacated. However, Movant's conviction in Count VI should stand.

## VI. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his motion to vacate has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell,* 556 U.S. 180, 183 (2009). This Court should issue a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Reasonable jurists may disagree with the manner of the Court's review of the *Stromberg* error or the Court's conclusion that the inextricably intertwined nature of the charges results in any error being harmless. The Court should grant a certificate of appealability on two issues: (1) whether the Court erred in applying the reasonable probability and harmless-error review standards

17

to an error arising from a jury that was instructed on multiple possible predicate crimes — one of which is invalid — and a general verdict that does not specify the predicate(s) on which the jury relied; and (2) whether the Court erred in determining the charges were inextricably intertwined and the error was harmless.

### VII. Conclusions and Recommendations

Based on the foregoing, it is recommended that:

1) the Motion be granted in part and denied in part. Movant's challenge to his conviction on Count III should be granted and the conviction and sentence on Count III should be vacated. Movant's challenge to Count VI should be denied;

2) a certificate of appealability should issue as discussed above; and,

3) the case be closed.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

Signed this 29th day of December, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Sara Kane
Federal Public Defender
150 West Flagler Street, Suite 1700
Miami, FL 33130
305-530-7000
Email: sara_kane@fd.org

Sean Paul Cronin
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132
305-961-9194
Fax: 305-536-7214
Email: sean.p.cronin@usdoj.gov

19